CONFIDENTIAL

# $\mathfrak{Supreme\ Court\ of\ Kentucky}$

## 2017-SC-000659-KB

KENTUCKY BAR ASSOCIATION                    COMPLAINANT

V.                          IN SUPREME COURT

CHRISTY SMITH GRAYSON                    RESPONDENT

### OPINION AND ORDER

Pursuant to Supreme Court Rule (SCR) 3.480(2),[1] the negotiated

sanction rule, Christy Smith Grayson[2] moves this Court to impose upon her a

five-year suspension with the conditions that she refund or partially refund

money to several former clients and that she participate in the Kentucky

---

[1] SCR 3.480(2) states in full:

> The Court may consider negotiated sanctions of disciplinary investigations, complaints or charges prior to the commencement of a hearing before a Trial Commissioner under SCR 3.240. Any member who is under investigation pursuant to SCR 3.160(2) or who has a complaint or charge pending in this jurisdiction, and who desires to terminate such investigation or disciplinary proceedings at any stage of it may request Bar Counsel to consider a negotiated sanction. If the member and Bar Counsel agree upon the specifics of the facts, the rules violated, and the appropriate sanction, the member shall file a motion with the Court which states such agreement, and serve a copy upon Bar Counsel, who shall, within 10 days of the Clerk's notice that the motion has been docketed, respond to its merits and confirm its agreement. The Disciplinary Clerk shall submit to the Court within the 10 day period the active disciplinary files to which the motion applies. The Court may approve the sanction agreed to by the parties, or may remand the case for hearing or other proceedings specified in the order of remand.

[2] KBA Member No. 88262; bar roster address: P.O. Box 2186, Inez, Kentucky 41224. Grayson was admitted to the practice of law May 1, 2000.

Lawyer Assistance Program (KYLAP). Grayson also requests that the suspension be made effective October 8, 2017. Grayson seeks this discipline to resolve nineteen disciplinary cases. Grayson is currently indefinitely suspended under SCR 3.380 pursuant to this Court's September 28, 2017 Opinion and Order in 2017-SC-000240-KB. *Kentucky Bar Association v. Grayson*, 530 S.W.3d 460 (Ky. 2017). Grayson further requests the indefinite suspension imposed in 2017-SC-000240-KB be dissolved as moot upon imposition of the currently requested discipline. The Kentucky Bar Association (KBA), through the Office of Bar Counsel (OBC), has no objection to Grayson's requests. "The Court may approve the sanction agreed to by the parties, or may remand the case for hearing or other proceedings specified in the order of remand." SCR 3.480(2); *See Anderson v. Kentucky Bar Association*, 262 S.W.3d 636, 638 (Ky. 2008) (The Court has discretion to accept or reject the negotiated sanction.).

As charged, the cases present a pattern of lack of diligence, misrepresentations, inadequate communications with the clients, and failure to refund unearned fees. One case involves Grayson's felony conviction for possession of a forged instrument. Grayson repeatedly states that her misconduct stems from depression for which she has sought treatment but the record contains no medical evidence. Grayson's verified statements alone are not sufficient for a mental health disability to be considered as mitigation. *See Kentucky Bar Association v. Hill*, 476 S.W.3d 874 (Ky. 2015) discussed *infra*. Although it may be that a five-year suspension, with conditions, is the

appropriate discipline for Grayson, that conclusion cannot be reached through consideration of Grayson's verified motion, the KBA's response, and the record currently before the Court. Because Grayson relies largely on findings related to her depression to mitigate her penalty (with no evidentiary support other than her own statements regarding diagnosis and treatment), and we cannot find at this time that other suggested mitigating circumstances — some of which are also related to Grayson's depression — are sufficient to conclude the proposed sanction is proper, we must reject the negotiated sanction. We remand this case for hearing.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A. Prior Disciplinary Proceedings

Grayson is presently under indefinite suspension, effective October 8, 2017, pursuant to this Court's September 28, 2017 Opinion and Order in 2017-SC-000240-KB for failing to respond to charges initiated by the KBA Inquiry Commission in 17-DIS-0026 and 17-DIS-0027. A private admonition issued May 23, 2018; the conduct underlying the admonition occurred within the same time period as the cases currently before the Court.

Leading up to this current action, in January 2018, this Court was asked by Grayson, represented by counsel, to review the Findings of Fact, Conclusions of Law, and Recommendation of the Board of Governors in 2017-SC-000659-KB for four default cases: 17-DIS-0026 and 17-DIS-0027, the two cases resulting in Grayson's indefinite suspension, and two others, 17-DIS-0099 and 17-DIS-0112. A discrepancy existed between the Board's vote on the

3

recommended discipline and that actually presented in the Board's Recommendation. The Board's September 15, 2017 vote breakdown indicated that the majority voted to suspend Grayson for five years, but the Board's December 2017 Recommendation stated that the recommendation was a five-year suspension with three years probated.

Grayson also tendered answers to the four default cases and asked that the disciplinary proceedings be remanded to the KBA for the filing of the answers into the record and for further proceedings before the KBA, allowing her to provide evidence addressing factual allegations and to provide mitigating evidence, particularly an objective healthcare assessment, relevant to the proper resolution of the proceedings. Grayson's January 2018 brief described mental health issues as playing a role in her inability to properly address the four disciplinary cases, as establishing a valid excuse for the default, and stated those issues were presently being assessed and evaluated.

In support of her remand request, Grayson specifically stated that for approximately the last two years she has been prescribed antidepressant medication by her primary care physician, and following the events in the latter part of 2017 that are before the KBA and this Court, she has sought comprehensive and aggressive mental healthcare assessment, evaluation, and treatment through a number of healthcare providers, including a psychiatrist. She stated that at that time, she had been diagnosed with depression (the scope and degree yet to be fully determined) and anxiety, and possible Post Traumatic Stress Disorder (PTSD). Grayson also stated that she recognized the

4

need to establish an appropriate connection between the conduct at issue in the Charges and any adverse health condition of hers which existed during that time. She noted that the process of assessment and evaluation had begun but had not yet concluded, but that part of the process had included her reaching out to KYLAP to assist in obtaining an appropriate mental health and physical health assessment and evaluation.

The four tendered answers contained like statements regarding Grayson's mental health. The tendered answers also stated that the ongoing and pending assessment regarding her health condition during the relevant time period of the Charge would provide material information and mitigating evidence in determining the appropriate outcome of the proceeding. She stated that a comprehensive mental healthcare assessment had yet to be performed, and a long-term treatment and counseling plan had yet to be established. In regard to KYLAP's requested assistance, Grayson also stated that part of the assessment would include determining the connection, if any, between her adverse health condition and the underlying conduct set out in the Charge. By its June 14, 2018 order, this Court granted Grayson's request to remand the matter to the KBA to allow filing of answers and development of the record so the Court could determine the appropriate discipline.

The four cases initially presented in 2017-SC-000659-KB are part of the nineteen cases considered in the present action, which maintains the same case number. Upon approval of the proposed sanction, the OBC requests the Court deem the consensual discipline as resolution of 2017-SC-000240-KB.

## B. Mitigation: Grayson's Statement Regarding Her Mental Health

Grayson states in her verified motion that her personal and professional life began deteriorating around 2016, eventually culminating in the present disciplinary proceeding. Several years ago (on a date not disclosed in the record), Grayson's primary care physician prescribed depression medication for Grayson. Matters in Grayson's personal life — including attempting to help her best friend suffering from serious mental health and alcohol problems and who died in early 2017, helping her friend's teenage daughters, and attempting to help her older and younger sisters who were also having their own personal, health, and employment problems — began to take their toll on her mental health, which had adverse consequences in her personal and professional life.

During those earlier times, Grayson states she was not fully disclosing to her physician all of the adverse matters in her life and the negative effects on her. And, as the various disciplinary proceedings began to pile up, Grayson did not reach out to others, personally or professionally, for help. According to Grayson, her chronic depression and anxiety were not properly diagnosed until after the various attorney disciplinary proceedings arose. Grayson alleges she ultimately reached out and received appropriate healthcare intervention in late 2017 and into 2018. As a result, Grayson maintains she was able to bring her life into an ongoing stable condition. Grayson states she has benefitted from counseling, treatment, a new approach to addressing life stressors, and prescribed depression medication, and that she is committed to continuing on a positive path. The proposed discipline is conditioned on Grayson entering

6

into an appropriate KYLAP agreement to monitor her ongoing compliance with treatment recommendations of her healthcare professionals.

### C. Violations Charged or Acknowledged[3] across Nineteen Cases

The motion for consensual discipline concerns seventy counts of misconduct across nineteen disciplinary cases. In terms of interaction with clients, the charged violations largely pertain to Grayson not acting with reasonable diligence when representing her clients, misrepresenting the status of their respective cases, not communicating with the clients to keep them reasonably informed or to provide requested information, and not refunding unearned fees. Criminal conduct related to possession of a forged instrument is also involved. Grayson admits violating the following Supreme Court Rules.

SCR 3.130(1.3): "A lawyer shall act with reasonable diligence and promptness in representing a client." KBA File Numbers 17-DIS-0026, 17-DIS-0027, 17-DIS-0099, 17-DIS-0112, 17-DIS-0189, 17-DIS-0228, 17-DIS-0257, 17-DIS-0341, 17-DIS-0368*, 17-DIS-0371, 17-DIS-0378, 17-DIS-0390, 17-DIS-0410, 17-DIS-0440*, 17-DIS-0445*, 18-DIS-0124* 18-DIS-0022*; seventeen counts total.

SCR 3.130(1.4)(a)(2): "A lawyer shall . . . (2) reasonably consult with the client about the means by which the client's objectives are to be accomplished."

---

[3] An asterisk by a disciplinary case indicates that Grayson acknowledges the allegations of the pending disciplinary case would support a violation of the Supreme Court Rule. The pending charges are included in the total violation count for the applicable Supreme Court Rule.

KBA File Numbers 17-DIS-0341, 17-DIS-0371, 17-DIS-0390, 17-DIS-0410, 17-DIS-0445*, 18-DIS-0124*, 18-DIS-0022*; seven counts total.

SCR 3.130(1.4)(a)(3): "A lawyer shall: . . . (3) keep the client reasonably informed about the status of the matter." KBA File Numbers 17-DIS-0026, 17-DIS-0027, 17-DIS-0257, 17-DIS-0371, 17-DIS-0378, 17-DIS-0390, 17-DIS-0410, 17-DIS-0440*, 17-DIS-0445*, 18-DIS-0124*, 18-DIS-0022*; eleven counts total.

SCR 3.130(1.4)(a)(4): "A lawyer shall: . . . (4) promptly comply with reasonable requests for information." KBA File Numbers 17-DIS-0026, 17-DIS-0027, 17-DIS-0099, 17-DIS-0112, 17-DIS-0244, 17-DIS-0341, 17-DIS-0410, 17-DIS-0440*, 17-DIS-0445*, 18-DIS-0124*, 18-DIS-0022*; eleven counts total.

SCR 3.130(1.16)(d): "Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law." KBA File Numbers 17-DIS-0026, 17-DIS-0099, 17-DIS-0189, 17-DIS-0228, 17-DIS-0244, 17-DIS-0341, 17-DIS-0371, 17-DIS-0378, 17-DIS-0390, 17-DIS-0410; ten counts total.

SCR 3.130(3.2): "A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client." KBA File Number 17-DIS-0244; one count total.

SCR 3.130(8.1)(b): "[A] lawyer . . . shall not: (b) . . . knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority." KBA File Numbers 17-DIS-0026, 17-DIS-0027, 17-DIS-0099, 17-DIS-0112, 17-DIS-0189, 17-DIS-0228, 17-DIS-0244, 17-DIS-0257; eight counts total.

SCR 3.130(8.4)(b): "It is professional misconduct for a lawyer to . . . (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." KBA File Number 18-DIS-0042*; one count total.

SCR 3.130(8.4)(c): "It is professional misconduct for a lawyer to: . . . (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation." KBA File Numbers 17-DIS-0027, 17-DIS-0112, 17-DIS-0189, 17-DIS-0228, 17-DIS-0244, 17-DIS-0257, 17-DIS-0368*, 17-DIS-0371, 17-DIS-0378, 17-DIS-0390, 17-DIS-0440*, 17-DIS-0445*, 18-DIS-0124*, 18-DIS-0022*; fourteen counts total.

### D. Nineteen Disciplinary Cases

Unless otherwise noted, Grayson admits she violated the Rules of Professional Conduct as alleged in each Charge or implicated by her conduct in

the cases in which a Charge has not been issued.[4] Across twelve of the fourteen cases which contain a charge of misrepresentation, in addition to making other statements regarding the alleged misrepresentations, Grayson makes a similar statement that any misrepresentations were not intentional conduct, although her misrepresentations were knowingly made, and that any such misrepresentations were made during the time when her chronic depression and anxiety had not been properly diagnosed. KBA File Numbers 17-DIS-0027, 17-DIS-0112, 17-DIS-0189, 17-DIS-0228, 17-DIS-0244, 17-DIS-0257, 17-DIS-0368*, 17-DIS-0371, 17-DIS-0378, 17-DIS-0390, 17-DIS-0440*, 17-DIS-0445*, 18-DIS-0124*, but not 17-DIS-0390 or 18-DIS-0022* which deals with a pending civil malpractice case. Grayson further states that beginning in late 2017, and continuing to the present, she has taken concrete and productive steps to address her depression and anxiety problems.

The criminal case at issue in KBA File 17-DIS-0042 (*infra*, case nineteen) and involving the complaints made in 17-DIS-0027 (*infra*, case two) and 17-DIS-0368 (*infra*, case ten), was resolved in October 2018 through a plea agreement with Grayson's two-year sentence being probated for one year, and Grayson's payment of expenses and letters of apology to the two former clients. KBA File 18-DIS-0022 (*infra*, case eighteen), concerns allegations stemming

---

[4] 17-DIS-0368 (Inquiry Commission Complaint), *infra*, case ten; 17-DIS-0440 (Bar Complaint, Charge authorized but not issued), *infra*, case fifteen; 17-DIS-0445 (Bar Complaint, Charge authorized but not issued), *infra*, case sixteen; 18-DIS-0124 (Bar Complaint), *infra*, case seventeen; 18-DIS-0022 (Inquiry Commission Complaint in abeyance), *infra*, case eighteen; and 18-DIS-0042 (Investigative file), *infra*, case nineteen.

10

from a pending legal malpractice action against Grayson. Grayson seeks a global resolution of all pending disciplinary matters.

Grayson acknowledges that thirteen of the former clients are entitled to a partial or complete refund of the fees previously paid, the restitution totaling $15,352.[5]

### 1. KBA File 17-DIS-0026[6,7] — The Williamson Matter

In April 2016, Ashley and Brandon Williamson retained Grayson to assist with a custody/private adoption proceeding of a then-unborn child. The Williamsons paid a $1,500 retainer for the contemplated representation. When the birth mother revoked her consent to adoption after giving birth in May 2016, Mrs. Williamson was of the belief that the legal proceedings were over and that no further action could be taken. In early June 2016, Grayson advised Mrs. Williamson that the case was not over,[8] and that the custody/adoption proceeding could proceed, but Grayson did not contact her with further explanation. Mrs. Williamson's multiple attempts to contact

---

[5] Grayson proposes that the restitution be paid within six months of this Court's order.

[6] Case considered in 2017-SC-000240-KB as a default case; Discipline: Indefinite Suspension.

[7] Including itself, twelve files are now consolidated under 17-DIS-0026: 17-DIS-0099, -0112, -0189, -0228, -0244, -0257, -0341, -0371, -0378, -0390, and -0410.

[8] The day after giving birth in May 2016, the birth mother revoked her consent to adoption. Grayson then filed in the Martin Circuit Court the previously=prepared Petition for Sole Custody and the birth mother's previously-signed Entry of Appearance, and tendered the Agreed Order signed by all parties regarding custody. Counsel for the birth mother filed a Notice of Revocation of Consent and Motion to Determine Revocation of Consent as Valid.

11

Grayson for explanation about hearing notices and other court orders were unsuccessful.

Grayson states she actively participated in the various hearings before the Martin Circuit Court through October 2016. Grayson acknowledges that by the latter part of 2016, there was a breakdown of communication with the Williamsons — communication was sporadic and brief — and she did not satisfy in full her communication obligation to the Williamsons.

On April 17, 2017, the Inquiry Commission initiated a Charge against Grayson alleging she violated the following five rules: (1) SCR 3.130(1.3) by failing to perform the work for which she was hired; (2) SCR 3.130(1.4)(a)(3) by not informing Mrs. Williamson of the status of the adoption matter; (3) SCR 3.130(1.4)(a)(4) by not responding to Mrs. Williamson's request for information and attempts to reach her; (4) SCR 3.130(1.16)(d) by failing to refund the fee to Mrs. Williamson after the birth mother revoked her consent to adoption; and (5) SCR 3.130(8.1)(b) by failing to respond to the Bar Complaint.

Grayson acknowledges Mrs. Williamson is entitled to a full refund in the sum of $1,500.

### 2.    KBA File 17-DIS-0027[9] — The Patrick Matter

Gina Patrick hired Grayson in November 2015 to facilitate custody/adoption of her grandson and paid her $1,176. According to Patrick, Grayson advised Patrick and her husband to appear in Martin Circuit Court on

---

[9] Case considered in 2017-SC-000240-KB as a default case; Discipline: Indefinite Suspension.

August 17, 2016. When they met Grayson outside the courtroom, Grayson informed them that court had been cancelled that morning, but the judge had decided to sign the adoption papers because their case had been passed several times, and that they would receive their paperwork in approximately three weeks. After three weeks, Patrick contacted the Martin Circuit Court Clerk's office and learned nothing had been filed and there were no past or scheduled court dates. When Patrick went to Grayson's office and asked for documentation of her pending adoption, Grayson provided Patrick with an "Agreed Custody Judgment" signed by Judge McKenzie-Wells on August 17, 2016.

In early October, Grayson told Patrick that the adoption case was filed and that a custody hearing was scheduled, after which Patrick would get a date for the final adoption. At the custody hearing, the circuit court heard a Motion to Accept Agreed Judgment which gave Patrick custody of her grandson. The adoption papers remained unfiled two weeks later. When Patrick appeared on her *pro se* motion to ask the court about the status of the adoption, Judge McKenzie-Wells informed Patrick that the August 2016 judgment was unrelated to Patrick's pending case or an adoption and that the signature on the document was not hers. Judge McKenzie-Wells explained that the November 4, 2016 Agreed Custody Judgment was the last action of record by the court and that as to the forged August 2016 judgment, the Patricks would need to confer with an attorney for legal advice.

13

Grayson, in her verified motion, explains that court filing delays were initially due to a failure to secure the birth father's signature on the Entry of Appearance until November 2015 and after that, Patrick communicated to her that the mother was having second thoughts about the Patricks adopting the child. Although the paperwork had been signed, the documentation was kept in Grayson's file. When the birth parents were again in agreement to moving forward on the custody and adoption proceedings, Grayson took custody-related documents to the Martin Circuit Clerk's office for filing. However, due to a mix-up, the filing didn't occur. Grayson realized the error when responding to Patrick's request for an update, and advised Patrick of the mix-up.

Grayson filed the custody proceeding with both birth parents' Entries of Appearance on October 4, 2016. On November 4, 2016, the court entered an Agreed Custody Judgment granting the child custody relief sought in the Petition. Thereafter, Grayson advised Patrick the adoption proceeding needed to be filed and Patrick would need to pay the filing fee. Patrick did not return to Grayson's office to pay that fee.

Grayson states that any misrepresentations she made concerning the adoption status and procedural steps were not intentional misconduct, although she acknowledges her misrepresentations were knowingly made. She also states that any such misrepresentations were made during the time when Grayson's chronic depression and anxiety had not been properly diagnosed, which issues have now been addressed.

14

On April 17, 2017, the Inquiry Commission initiated a Charge against Grayson alleging she violated the following five rules: (1) SCR 3.130(1.3) by failing to perform the work for which she was hired; (2) SCR 3.130(1.4)(a)(3) by failing to inform Patrick of the status of her adoption matter; (3) SCR 3.130(1.4)(a)(4) by failing to respond to Patrick's attempts to contact her; (4) SCR 3.130(8.1)(b) by failing to respond to the Bar Complaint; and (5) SCR 3.130(8.4)(c) by conduct including, but not limited to, telling Patrick her adoption was pending when no such action had been initiated; and providing Patrick with a document bearing an inaccurate case number and a signature purported to be that of Judge Janie McKenzie-Wells when the judge had not signed the document.

Grayson has reimbursed Patrick's previously paid attorney fees, such payment being part of the resolution of the criminal case discussed *infra.*

### 3.    KBA File 17-DIS-0099 — The Fraley Matter

In January 2017, Samantha Fraley retained Grayson to assist her in obtaining sole custody of her seven-year-old child. Fraley completed initial paperwork, but did not provide an address for the father to be served. Fraley paid Grayson for filing fees and $100 toward attorney fees. Grayson prepared a Petition for Custody, which Fraley signed on January 30, 2017. The petition was not filed and a little over two weeks after Fraley retained Grayson, the father filed his own petition in Martin Circuit Court. Fraley complained about Grayson's failure to file her petition, Grayson's lack of response to her calls,

and Grayson not creating a file for her case, a fact discovered when Fraley went to pick up her file and give it to another attorney.

Grayson states that she and Fraley conferred concerning the options available after the initiation of the Martin Circuit Court case, but acknowledges and expresses regrets for the breakdown in communication with Fraley.

On June 9, 2017, the Inquiry Commission charged Grayson violated four rules: (1) SCR 3.130(1.3) by failing to file a custody petition on behalf of Fraley; (2) SCR 3.130(1.4)(a)(4) by failing to respond to Fraley's attempts to contact her regarding the status of her custody matter; (3) SCR 3.130(1.16)(d) by failing to return the unearned attorney fee and unpaid filing fees to Fraley after the representation ended; and (4) SCR 3.130(8.1)(b) by failing to respond to the Bar Complaint.

Grayson acknowledges that while she performed some services after initially conferring with Fraley, Fraley is entitled to a full refund of $276.

### 4.    KBA File 17-DIS-0112 — The Alexander Matter

In August 2016, Sandra Alexander retained Grayson to file an ancillary probate proceeding in Kentucky and paid her $350 in attorney fees. Alexander was the Executrix of a decedent's Estate in West Virginia. That estate included real property in Martin County, Kentucky, necessitating the ancillary proceeding.

Alexander complained that Grayson told her the entire matter would be finished by mid-November 2016, that Grayson told her the matter had been filed and an order signed by the judge, and that the order had been mailed to

16

the wrong address in January 2017, but that the proceedings had concluded. Alexander later learned the action was never filed. Through mid-March 2017, Alexander's and her sister's attempts to contact Grayson at her office were unsuccessful. In mid-March, Alexander sent a letter terminating the representation.

Grayson states any alleged misrepresentations were made during the time when her chronic depression and anxiety had not been properly diagnosed, which issues she says have now been addressed.

Grayson acknowledges there was a breakdown in communication with Alexander during January and February of 2017. Grayson also acknowledges that although she conferred with Alexander, reviewed certain documents, and corresponded with Alexander, the contemplated ancillary probate proceedings were not initiated. Alexander denies ever instructing Grayson not to communicate with her sister and receiving a December 14, 2016 letter from Grayson confirming that Alexander did not want Grayson to communicate with Alexander's sister.

The Charge filed on June 9, 2017, alleged Grayson violated four rules: (1) SCR 3.130(1.3) by failing to file the ancillary probate petition and/or perform any work for her clients; (2) SCR 3.130(1.4)(a)(4) by failing to return Alexander's phone calls and failing to respond to requests for information from Alexander and her sister; (3) SCR 3.130(8.1)(b) by failing to respond to the Bar Complaint; and (4) SCR 3.130(8.4)(c) by failing to take any action on behalf of Alexander and her siblings, despite being paid and depositing the check, and

17

misrepresenting the status of the matter to the clients when she claimed on several occasions that the matter was pending and would soon conclude.

Grayson acknowledges that Alexander is entitled to reimbursement of the full $350 attorney fees previously paid.

### 5.    KBA File 17-DIS-0189 — The Smith Matter

In July 2016, Linda Smith retained Grayson to pursue custody of her then five-year-old grandchild who was living in Ohio. Smith paid Grayson $1,500 on August 2, 2016. In her bar compliant, Smith complained that Grayson misrepresented to her that Grayson was talking to a judge, that the custody matter was moving forward, and that her case was pending and to be on standby. Grayson states that during her representation of Smith, she did not speak with the judge, but did speak to the judge's staff on the issue of jurisdiction and venue. Grayson does not recall telling Smith that she had talked to the judge, and does not recall making any material misrepresentation of fact regarding the procedural status of any proceedings in Kentucky. Grayson states any such misrepresentations were made during the time when her chronic depression and anxiety had not been properly diagnosed, which issues she says have now been addressed.

Smith also complained that at Grayson's direction, she prepared for a Child Protective Services (CPS) visit to her home. When no one from CPS arrived, Smith called CPS and learned there was no record of an appointment or a court order for a home visit. Grayson states she described to Smith actions Smith would need to take in order for Kentucky to exercise jurisdiction

18

over her grandson and acknowledges that Smith frequently called Grayson's office and Grayson would again indicate that the child needed to be physically present in Kentucky before Kentucky CPS could do an investigation. At a point in time, Smith showed up at Grayson's office with her grandson. Grayson states she contacted the local social services agency who were to go out that day to interview Smith and to assess the grandchild.

The Charge filed on September 22, 2017, alleged Grayson violated four rules: (1) SCR 3.130(1.3) by failing to take any action to file or otherwise pursue Smith's custody matter; (2) SCR 3.130(1.16)(d) by failing to perform any work for Smith and failing to return the unearned advance fee payment; (3) SCR 3.130(8.1)(b) by failing to respond to the Bar Complaint; and (4) SCR 3.130(8.4)(c) by making multiple misrepresentations to Smith concerning existence of the custody matter.

Grayson acknowledges that Smith is entitled to full refund in the sum of $1,500, although she performed services in her representation of Smith.

### 6.    KBA File 17-DIS-0228 – The Spence Matter

Mr. Tracy Spence retained Grayson in September 2015 for the filing of an uncontested divorce, and by the end of January 2016 paid Grayson a total of $600. Spence complained that although he and his wife signed several documents, the divorce petition was not filed. Furthermore, when Spence and his wife called to check on the status of their divorce, they were told the paperwork had been sent to Frankfort. Grayson's verified motion explains that in early January 2016 and again in early February 2016, she notified Spence

19

by letter that Mrs. Spence needed to return to the office to sign a necessary document and that he had not yet paid the filing fee for the divorce. Spence denies receiving the letters.

The Charge filed on September 22, 2017, alleges Grayson violated four rules: (1) SCR 3.130(1.3) by failing to file the petition for dissolution on behalf of Spence; (2) SCR 3.130(1.16)(d) by failing to inform her client she could no longer represent him or otherwise act to protect his interests before abandoning the case, and by failing to return the unearned advance payment; (3) SCR 3.130(8.1)(b) by failing to respond to the Bar Complaint; and (4) SCR 3.130(8.4)(c) by misrepresenting to Spence that the divorce petition had been filed and a divorce was forthcoming.

Grayson states that any such representations were not intentional misconduct, although she acknowledges her misrepresentations were knowingly made. She further states that any such misrepresentations were made during the time when her chronic depression and anxiety had not been properly diagnosed, which issues she says have now been addressed.

Grayson acknowledges that she did not provide complete representation to Spence in his divorce proceeding and he is entitled to a partial refund in the sum of $300.

### 7.  KBA File 17-DIS-0244 — The Siddell Matter

In mid-November 2016, Lisa Siddell retained Grayson to represent her in an uncontested divorce proceeding, paying Grayson $600. The Siddells were told the divorce would be final within sixty days. Although Grayson filed the

documents on December 27, 2016, Grayson failed to submit the matter for a decree of dissolution as required by Family Court Rules. Siddell contacted Grayson for an update in February 2017, and Grayson stated the divorce was final. When Siddell arrived at her appointment to get a copy of the decree, Grayson was not there and Siddell's later attempts to reach Grayson were unsuccessful. Siddell was informed by the court clerk's office that the divorce was not final. When contacted, Grayson stated the divorce was signed by the judge, but Grayson forgot to file the documents with the clerk's office. Grayson stated she would have the divorce finalized within the week. When Siddell arrived at her appointment to pick up the documents, Grayson's office was locked and Grayson did not answer Siddell's calls.

Grayson acknowledges in her verified motion that Siddell had a number of conversations with her concerning whether the case had been submitted to the court for the entry of the decree. Grayson recalls telling Siddell that she would file the necessary documentation for its entry, but Grayson acknowledges that she did not submit the case for the entry of the decree. Grayson does not independently recall making any material misrepresentations to Siddell concerning the procedural status of the divorce case. Grayson states that any such material misrepresentations were not intentional conduct, although Grayson acknowledges her misrepresentations were knowingly made. Any such misrepresentations were made during the time when her chronic depression and anxiety had not been properly diagnosed, which issues she claims have now been addressed.

21

The Charge filed September 22, 2017, alleged Grayson violated five rules: (1) SCR 3.130(1.4)(a)(4) by failing to respond to Siddell's calls and respond to her requests for information concerning the status of the uncontested divorce; (2) SCR 3.130(1.16)(d) by not completing the representation, failing to take action to protect her client's interests, and failing to return the unearned portion of the fee; (3) SCR 3.130(3.2) by failing to submit the matter for a decree as required by the Family Court Rules; (4) SCR 3.130(8.1)(b) by failing to respond to the Bar Complaint; and (5) SCR 3.130(8.4)(c) by making misrepresentations to the client regarding the status of the uncontested divorce, including telling the client the divorce was final and the judge had signed the decree.

Grayson acknowledges Siddell is entitled to a partial refund in the sum of $300.

## 8. KBA File 17-DIS-0257 — The Carol Sue Fletcher Matter

On or about February 10, 2017, Carol Sue Fletcher retained Grayson to represent her in an uncontested divorce proceeding, paying her a total of $600 by March 31, 2017. Fletcher complained of the time Grayson took to have Mr. Fletcher sign the necessary documents, but eventually the documents were fully executed by both Mr. and Mrs. Fletcher. Further, after not receiving a decree and being unable to reach Grayson by phone, Fletcher went to Grayson's office in June or July 2017. Grayson informed Fletcher the judge was behind, Grayson had been on vacation, and Grayson would obtain the signed decree from the judge for Fletcher. When Fletcher returned an hour

later to obtain the promised copy, Grayson's office was locked and she did not answer the door. Fletcher learned from the Martin Circuit Clerk's office that there was no pending divorce matter. Fletcher was unable to reach Grayson after the office visit.

Grayson states in her verified motion that Grayson is unsure why Mr. Fletcher did not sign the Property and Separation Agreement, but the necessary documents for filing the divorce were not available during the time of Grayson's representation of Mrs. Fletcher. Grayson also does not recall making any such material misrepresentations of fact to Fletcher, and believes she would recall making such statements had they been made. Grayson further states any such misrepresentations were not intentional misconduct, although she acknowledges her misrepresentations were knowingly made. Any such misrepresentations were made during the time when her chronic depression and anxiety had not been properly diagnosed, which issues she claims have now been addressed.

The Charge filed September 22, 2017, alleged Grayson violated four rules: (1) SCR 3.130(1.3) by failing to file the divorce; (2) SCR 3.130(1.4)(a)(3) by failing to tell Fletcher she had not filed the divorce and not responding to Fletcher's attempts to get information about the status of her divorce; (3) SCR 3.130(8.1)(b) by failing to respond to the Bar Complaint; (4) SCR 3.130(8.4)(c) by collecting a $600 fee, failing to file the divorce, and misrepresenting the status of the case, first claiming the judge was behind and later that she would provide the decree to Mrs. Fletcher.

23

Grayson acknowledges Fletcher is entitled to a partial refund in the sum of $300.

### 9.    KBA File 17-DIS-0341 — The Hall Matter

Shonda Hall hired Grayson in early August 2017. At that time, there was a pending post-divorce custody matter concerning Hall in Floyd Circuit Court. A hearing was set for August 25, 2017, a time Grayson was not available. Because she was not available at that time, Grayson did not enter her appearance in the case. Nevertheless, she accepted a $500 fee from Hall. Hall learned later through the clerk's office that Grayson had not entered an appearance in the case.

Hall complained that after hiring Grayson, she had difficulty reaching her and was unable to substantively discuss her case. Hall attempted to contact Grayson on August 24 to confirm she would appear in court on August 25; Hall was not informed by Grayson that the August 25 hearing had been rescheduled to September 22. Hall terminated the representation when she did not receive a response. Grayson advised Hall to make an appointment the following week to obtain a refund. Grayson then blocked Hall on Facebook, their primary method of communication. Grayson states that because she was not counsel of record, she was not receiving the filings in the proceeding and she was depending on Hall to keep her advised that a continuance had been granted.

Grayson acknowledges that her conduct fell below that required of an attorney, that confusion developed between Grayson and Hall regarding the

24

procedural status of the court proceedings and the significance of what was occurring; that there was a communication breakdown between her and Hall; and that she should have been more proactive in her representation of Hall and communicated her understanding of the representation to Hall.

The Charge filed May 14, 2018, alleged Grayson violated four rules: (1) SCR 3.130(1.3) by accepting the representation and failing to take action to represent her client; (2) SCR 3.130(1.4)(a)(2) by failing to inform Hall that she was not available on the scheduled hearing date, by not entering an appearance in the case, and relying on Hall to inform her of the status of the case; (3) SCR 3.130(1.4)(a)(4) by failing to respond to her client's requests to meet with her and discuss the custody matter; and (4) SCR 3.130(1.16)(d) by failing to return the unearned portion of the fee following the termination of the representation.

Grayson acknowledges Hall is entitled to a full refund in the sum of $500.

### 10. KBA File 17-DIS-0368 — Inquiry Commission Complaint regarding the Naomi Fletcher Matter

In October 2014, Naomi Fletcher contacted Grayson concerning a custody/adoption proceeding regarding her grandson. Grayson prepared an Agreed Order regarding custody which the Fletchers and the birth parents signed. In May 2015, Grayson gave Fletcher a copy of an Agreed Order signed by Martin Family Court Judge McKenzie-Wells on May 17, 2015; the case number on the order was 15-CI-77. In 2017, when Fletcher went to the clerk's office to inquire about the status of the proceedings, she learned 15-CI-77 was

not a family court case nor was she a party to the case. The clerk also noted the signature on the Agreed Order was not Judge McKenzie-Wells's. The clerk's office had no record of adoption or custody proceedings filed on behalf of Fletcher.

Grayson states in her verified motion that after the Agreed Order was signed by the Fletchers and the birth parents, an unrelated matter caused conflict between Fletcher and the birth mother which complicated the custody agreement. In January 2015, Fletcher indicated she wanted to hold off on instituting legal proceedings regarding the child and filing the Agreed Order. The child remained informally with Fletcher. The situation persisted throughout 2015. When another conflict arose in 2016 with the birth mother, Fletcher did not want Grayson to pursue the formal custody of the child who remained with her.

Grayson states she would have likely given Fletcher a copy of the draft agreed order signed by the prospective parties. Grayson does not have facts to dispute Fletcher's contention the she was provided a copy of what was purported to be the Agreed Order signed by the judge. However, Grayson does not have any independent recollection of having given such a document to Fletcher. Grayson states any such misrepresentations were not intentional misconduct, although she acknowledges her misrepresentations were knowingly made. Further, any such misrepresentations were made during the time when her chronic depression and anxiety had not been properly diagnosed, which issues she states have now been addressed.

The Inquiry Commission Complaint filed November 8, 2017, alleged Grayson minimally violated two rules: (1) SCR 3.130(1.3) by failing to act with reasonable diligence and promptness in representing the client; and (2) SCR 3.130(8.4)(c) regarding conduct involving dishonesty, fraud, deceit and misrepresentation. The allegations underlying the Inquiry Commission's Complaint were also the subject of criminal charges in Pike County. Those charges are further detailed *infra* in case number nineteen.

## 11.    KBA File 17-DIS-0371 — The Dials Matter

Jaclyn Dials (Dials), along with her aunt, Barbara Dials, contacted Grayson on March 14, 2017, concerning a contemplated custody proceeding. Barbara was given custody of Dials's child in a dependency, abuse and neglect proceeding. Dials and Barbara agreed that custody of the child should be returned to Dials, who was living in Ohio. Dials paid Grayson $686 to represent her. Grayson initially told Dials that the process would likely be concluded in May 2017.

Dials stated in her complaint that when she next spoke with Grayson on April 14, 2017, Grayson indicated that she was waiting for the results of Dials's background check before the case could move forward and that it would take six to eight weeks to complete the custody modification. Dials complained that Grayson did not communicate with her after April 14, 2017.

In June 2017, Barbara was successful in getting Grayson's personal phone number. Grayson told Barbara the background check looked great and Martin Family Court Judge McKenzie-Wells, the Commonwealth, and the State

27

of Ohio all agreed Dials should receive custody of the child. Grayson sent Barbara documents to sign and told her that the judge would sign an order in court on July 19, 2017, and only Barbara needed to be present. Grayson called Barbara on July 18, 2017, and told her Judge McKenzie-Wells did not have time to hear the case on July 19, but since the parties agreed, the judge would sign the order. Grayson did not communicate with Barbara after July 18, 2017.

In August 2017, Dials contacted the clerk's office to get a copy of the motion she believed had been filed in the matter. She learned the custody modification had not been filed. Dials was unsuccessful in reaching Grayson by calling and texting.

Grayson states in her verified motion that she indicated to Dials and Barbara that she could prepare an Agreed Custody Order for submission to the court. However, Barbara, who resided locally and maintained contact with Dials, returned the draft order without Dials's notarized signature. The document, consequently, was not in form to be filed, and the matter was complicated by Dials's inability to reach Grayson after April 2017. Grayson does not independently recall making any material misrepresentations to the Dials concerning the status of any legal proceeding or inquiry either in Kentucky or Ohio regarding custody. Grayson states any such misrepresentations were not intentional misconduct, although she acknowledges her misrepresentations were knowingly made. According to her, any such misrepresentations were made during the time when her chronic

28

depression and anxiety had not been properly diagnosed, which issues have now been addressed.

The Charge filed May 14, 2018, alleged Grayson violated four rules: (1) SCR 3.130(1.3) by failing to provide substantive representation to Dials; (2) SCR 3.130(1.4)(a)(2) by failing to consult with her client to explain how she would assist the client with modification of a prior custody order; (3) SCR 3.130(1.4)(a)(3) by failing to respond to her client's attempts to contact her for status updates and by failing to provide her client with status updates; (4) SCR 3.130(1.16)(d) by failing to complete the representation, failing to notify her client of her inability or unwillingness to proceed, and failing to refund the unearned portion of the advance fee payment; and (5) SCR 3.130(8.4)(c) by misrepresenting the status of the custody case to her client and her client's aunt.

Grayson acknowledges that Dials is entitled to a partial refund in the sum of $500.

## 12.  KBA File 17-DIS-0378 — The Chapman Matter

In early 2013, Grayson represented Patricia Chapman and her husband. In that Martin Circuit Court proceeding, an Agreed Order was entered naming the Chapmans as the *de facto* custodians and awarding them full custodial rights of their grandchildren. In June 2016, the Chapmans contacted Grayson regarding representing them in a proceeding for their adoption of their grandchildren. The Chapmans paid Grayson $1,500.

29

The Chapmans initially received updates from Grayson regarding the status of the alleged proceedings — including the paperwork had gone to Frankfort, the paperwork had been returned, everything was on track, and the court decided they did not need social services to do a home visit and would schedule a court date. In the summer of 2017, having not received further updates, the Chapmans attempted to reach Grayson by phone and even visited her office. The office doors were always locked, and even though they could see Grayson, she did not come to the door.

In July 2017, Grayson told the Chapmans that a court date was scheduled for August 2, 2017, at 9:00 a.m. As they drove to the courthouse that morning, Grayson called and told them the judge had an emergency and had to leave. Grayson indicated she would attempt to reschedule for August 16, 2017. The Chapmans did not hear from Grayson again. When responding to the bar complaint, Grayson admitted she took no action on the Chapmans' behalf.

Grayson states in her verified motion that she does not have any independent recollection of having made material misstatements concerning the procedural status of adoption proceedings to the Chapmans. Grayson regrets that circumstances were such that she had not able to conclude that representation. Grayson states that any such misrepresentations by Grayson were not intentional misconduct, although she acknowledges her misrepresentations were knowingly made. Any such misrepresentations were

made during the time when Grayson's chronic depression and anxiety had not been properly diagnosed, which issues she says have now been addressed.

The Charge filed May 14, 2018, alleged Grayson violated four rules: (1) SCR 3.130(1.3) by failing to file the adoption; (2) SCR 3.130(1.4)(a)(3) by failing to inform her clients about the status of the matter in 2016 and 2017; (3) SCR 3.130(1.16)(d) by abandoning the representation with no notice to the Chapmans, by retaining the $1,500 fee since 2016 without providing legal work, and by failing to return papers provided to her by the Chapmans; and (4) SCR 3.130(8.4)(c) by making numerous misrepresentations to her clients concerning the status of the adoption, which included 1) the adoption proceedings were pending, 2) paperwork had been sent to Frankfort, 3) the court had considered the matter, 4) the court scheduled a hearing for August 2, 2017, and 5) the court cancelled the hearing due to an emergency.

Grayson acknowledges Mr. and Mrs. Chapman are entitled to a full refund in the sum of $1,500.

### 13.   KBA File 17-DIS-0390 — The Maynard Matter

In April 2017, Justin Maynard retained Grayson to prepare necessary documents regarding an uncontested divorce proceeding. He paid her $750. Maynard and his wife signed documents prepared by Grayson and were told the divorce would be final after sixty days. After not receiving an update, Maynard called Grayson. Grayson informed him that there had been a mix-up in Frankfort and his divorce had not been filed. By that time, Maynard's wife had moved to Ohio and taken their child with her. On September 19, 2017,

31

after Grayson responded to Maynard via Facebook Messenger that his case was on the docket October 4, Maynard went to the clerk's office to verify the date. He learned his divorce had never been filed.

In her verified motion, Grayson states that although she prepared the documents for the uncontested divorce, for reasons that are unclear, not all the documents were signed by the Maynards and Grayson did not file the petition and attendant documents. Later, a dispute developed between the Maynards regarding custody, and Grayson informed Mr. Maynard that a petition and a motion would need to be filed and informed Mr. Maynard, based upon the filing of the petition, of a potential court date. According to Grayson, she did not tell Mr. Maynard that the divorce case was on the court's docket for October 4 since no petition had been signed by Maynard nor had a motion for child custody been filed.

Grayson acknowledges there was a breakdown in communication with Maynard and she should have been more diligent in his representation. Grayson acknowledges there was confusion as to what goals Maynard wanted to pursue when the uncontested proceeding became a contested proceeding. Grayson's communications with Maynard regarding any court action which could be taken or had been taken, did not reflect any intentional misrepresentation on her part. She regrets if her communications with Maynard constituted misleading him concerning the procedural status of any proceedings.

The Charge filed June 11, 2018, alleged Grayson violated five rules: (1) SCR 3.130(1.3) by failing to perform the work for which she had been hired and failing to advise her client how to proceed when the divorce became contested; (2) SCR 3.130(1.4)(a)(2) by failing to inform her client that he and his wife needed to sign additional documents before the divorce could proceed; (3) SCR 3.130(1.4)(a)(3) by failing to explain the status of the matter to her client, including failing to inform her client the divorce, and any attendant agreements, had not been filed with the appropriate court; (4) SCR 3.130(1.16)(d) by failing to refund the unearned portion of the advance fee payment; and (5) SCR 3.130(8.4)(c) by informing her client that his divorce had been filed and a court appearance was scheduled for October 4, 2017.

Grayson acknowledges Maynard is entitled to a partial refund in the sum of $500.

### 14.    KBA File 17-DIS-0410 — The Davis Matter

Grayson's legal representation in this matter began in early 2017; litigation was then-pending. The subject matter of that litigation concerned the estate of Winford Davis. On February 26, 2016, a civil suit was filed in the Martin Circuit Court alleging fraud and conversion of estate assets in order to defraud plaintiff Moore as a creditor. At that time, Thelma Davis was serving as a co-executor of the estate.

By the Spring of 2017, there was a pending trial date of June 12, 2017. On April 26, 2017, co-executor Don Davis, by counsel, filed a motion to continue the trial date. On the same date, Grayson was hired to represent Ms.

33

Davis; Don Davis paid the $7,500 retainer fee on behalf of Thelma Davis. Counsel for Mr. Davis put Grayson on the certificate of service of the motion. Grayson states she was of the understanding that Don Davis, through counsel, was still going to take the lead in the proceedings.

In her bar complaint, Thelma Davis complained that the April 26, 2017 meeting was the only contact she had with Grayson. Davis attempted to contact Grayson during the representation but was unsuccessful. Davis did not agree or intend to limit Grayson's representation. Moore had filed an amended complaint on April 20, 2017, and Grayson did not file an answer on Davis's behalf. When the court continued the June 1, 2017 trial date to December 4, 2017, Grayson did not inform Davis of the continuance. Grayson did not file an entry of appearance in the case nor provide Davis with a copy of the fee agreement.

Grayson states in her verified motion that the next court hearing after June 1, 2017, was the November 2, 2017 motion hour regarding a number of motions which had been filed by the parties in late October 2017. By that time, Grayson was already under suspension, and had notified Davis of that suspension and her inability to continue to represent Davis.

Grayson acknowledges that there was a breakdown on her part in communications with Davis and others during the latter time of her representation of Davis. On October 18, 2017, eight days after Grayson filed the notice of her suspension in the civil suit, Davis filed a Client Security Fund

Claim with the Kentucky Bar Association, which was also treated as the above-captioned disciplinary proceeding.

The Charge filed June 11, 2018, alleged Grayson violated five rules: (1) SCR 3.130(1.3) by failing to provide representation to Davis; (2) SCR 3.130(1.4)(a)(2) by failing to consult with Davis regarding Grayson's role in the litigation; (3) SCR 3.130(1.4)(a)(3) by failing to inform her client of motions to continue and orders concerning the trial date; (4) SCR 3.130(1.4)(a)(4) by failing to respond to Davis's requests for information concerning the litigation; and (5) SCR 3.130(1.16)(d) by failing to return the unearned portion of the advance fee payment.

Grayson acknowledges Davis is entitled to a partial refund in the sum of $7,000.

### 15.    KBA File 17-DIS-0440 — The Stacy Bar Complaint[10]

Abraham Stacy hired Grayson in mid-2015 to file a civil action in Martin Circuit Court against a tax and bookkeeping business which provided services to Stacy's business, Pizza Stop. The civil action was initiated after Gary Brewer, an employee of that bookkeeping business, was convicted in January 2015 of stealing approximately $148,000 from Pizza Stop by issuing bogus payroll checks.

The case progressed. As a result of the defendants' motion, Brewer was joined as a necessary party. On May 11, 2016, the trial court entered

---

[10] Charges authorized but not issued.

summary judgment in favor of all the defendants except Brewer. On June 9, 2016, Grayson, on behalf of the plaintiff, Pizza Stop, filed a motion for summary judgment against him. On July 13, 2016, the trial court sustained the motion and entered a summary judgment in favor of Grayson's client against Brewer.

Stacy complained that at one point, Grayson told him that the circuit court judge had sent the case to the Court of Appeals for a decision, and that he might have to go in front of the Court of Appeals to testify. As time went on and Stacy sought updates, Grayson would not answer his calls, would not return his messages, and would keep her office door locked. Stacy learned of the May 11, 2016 summary judgment when another attorney checked the case status for him. Stacy complained that he paid out around $5,000 for attorney fees, arbitration fees, and other fees.

Grayson states that following the trial court's July 13, 2016 summary judgment, Grayson and Stacy conferred. Grayson recalls that they discussed whether Stacy wanted to appeal the May 11, 2016 summary judgment, and he decided to attempt to seek relief in a Fayette Circuit case. On August 3, 2016, Grayson sent Stacy a letter to confirm Stacy's decision to not appeal the adverse ruling in the Martin Circuit Court proceeding; Stacy denies receiving that letter and that he decided to seek other relief in Fayette Circuit Court.

Grayson acknowledges that she did not maintain proper communication with Stacy during the latter part of the representation. Grayson does not independently recall making any material misstatements of fact to Stacy

36

concerning the procedural status of the proceedings including any supposed appellate proceedings as alleged by Stacy in his Bar Complaint. Grayson states any such misrepresentations by Grayson were not intentional misconduct, although she acknowledges her misrepresentations were knowingly made. Any such misrepresentations were made during the time when Grayson's chronic depression and anxiety had not been properly diagnosed, which issues she says have now been properly addressed.

Because of the efforts of the KBA, through the Office of Bar Counsel, and Grayson, by counsel, to resolve all pending KBA disciplinary matters, no Charge was issued, although authorized. Grayson acknowledges that the allegations of Stacy's Bar Complaint would support a charge that Grayson violated four rules: (1) SCR 3.130(1.3) by failing to act with reasonable diligence and promptness in representing the client; (2) SCR 3.130(1.4)(a)(3) by not keeping the client reasonably informed about the status of the representation; (3) SCR 3.130(1.4)(a)(4) by not promptly complying with reasonable requests for information from the client; and (4) SCR 3.130(8.4)(c) regarding conduct involving dishonesty, fraud, deceit and misrepresentation.

### 16.    KBA File 17-DIS-0445 — The Chapman Bar Complaint[11]

In January 2013 Clyde Chapman hired Grayson to file a medical malpractice case on his behalf. In October 2013, the suit was dismissed on

---

[11] Charge authorized but not issued.

statute of limitations grounds. Grayson successfully appealed the dismissal to the Court of Appeals, and the suit resumed in the latter part of 2015.

In 2016, the trial was scheduled for February 27, 2017. Per an agreed scheduling order, Chapman's deadline for presenting his expert witness for depositions was November 16, 2016. In October 2016, efforts were made to schedule the expert's deposition, but difficulties were encountered, one being that the expert then lived in New Jersey. Because of the difficulty in arranging the deposition, the trial court set aside the trial date. By the time of the status conference on January 13, 2017, the deposition was scheduled in New Jersey on January 16, 2017. The trial was rescheduled for May 22, 2017.

Chapman stated in his bar complaint that he had contact with Grayson only a few times. One of those times he stopped in her office and she told him it was time for his expert's deposition and she was trying to conduct the deposition by phone because she did not have the time nor the money for a trip to New Jersey. Chapman gave her $4,000 for the trip and assumed she made the trip; Chapman did not receive a receipt or make contemporaneous notes of said payment. Later, despite no communication with Grayson to this effect, Grayson communicated to opposing counsel that Chapman had terminated her services and the deposition could not go forward. Finding Grayson's last-minute cancellation egregious, the circuit court ordered Chapman to pay opposing counsels' costs and fees spent to attend the deposition. When Chapman showed the order to Grayson, she was unaware of it, but she informed him that she had filed a motion to withdraw as counsel as a legal

maneuver to buy time, but she would step back in at a later time. When new counsel did not enter an appearance as ordered, the circuit court dismissed Chapman's suit.

Grayson's verified motion states that over the weekend before the deposition, Grayson and Chapman had a number of telephone conversations. Chapman made statements to Grayson which gave her some concern regarding the legitimacy of his claim. Ultimately, in those conversations, Chapman told Grayson that he was terminating her representation. Shortly thereafter on that Sunday, Grayson sent an email to opposing counsel advising that her representation of Chapman had concluded, and Chapman instructed her to not go forward with the deposition as he wanted his new attorney present at the deposition. In regard to the costs incurred as a result of the cancellation of the January 16, 2017 deposition, Grayson advised opposing counsel that Chapman said he would reimburse opposing counsel for their plane tickets.

On January 19, 2017, the defendants filed a joint motion for the awarding of costs and fees, for the striking of Chapman's expert, and for the dismissal of the civil suit. On January 26, 2017, Grayson filed two motions. The first motion was to withdraw as counsel of record for Chapman since he had terminated her. The second motion was to continue the hearing on the defendants' joint motion because Grayson had a scheduling conflict and because she had been terminated by Chapman and did not have any authority to respond to the joint motion.

On January 27, 2017, the trial court conducted a hearing on the defendants' joint motion for fees and costs and the dismissal of the suit. It is Grayson's recollection that both she and Chapman were present at that hearing. The trial court found that the cancelling of the deposition was unjustified and noted Grayson's conduct was improper because she had not sought permission to withdraw before she unilaterally cancelled the deposition. Later that day, Chapman came to Grayson's office and picked up his file.

On January 30, 2017, the circuit court entered an order on the motion for the award of fees and costs. The court indicated that Chapman had ten days to pay the costs. The court took under submission the defendants' joint motion to dismiss the civil suit. Grayson did not send that order to Chapman.

On February 10, 2017, the court entered an order allowing Grayson to withdraw as counsel of record for Chapman. The court indicated in its order that Chapman would have twenty days to retain new counsel, which would have been up through and including March 2, 2017. Grayson did not send the order to Chapman. Chapman did not retain other counsel and there was no entry of appearance within that time frame. On March 10, 2017, the court entered an order dismissing the civil suit.

Grayson has no recollection of making material misstatements to Chapman regarding the status of any proceedings before the trial court or any proposed proceedings before the Court of Appeals. Grayson states that any such misrepresentations were not intentional misconduct, although she acknowledges her misrepresentations were knowingly made. She states further

that any such misrepresentations were made during the time when Grayson's chronic depression and anxiety had not been properly diagnosed, which issues she claims have now been properly addressed.

Grayson acknowledges that the allegations of Chapman's Bar Complaint would support a charge that Grayson violated five rules: (1) SCR 3.130(1.3) by failing to act with reasonable diligence and promptness in representing the client; (2) SCR 3.130(1.4)(a)(2) by not reasonably consulting with the client about the means by which the client's objectives are to be accomplished; (3) SCR 3.130(1.4)(a)(3) by not keeping the client reasonably informed about the status of the representation; (4) SCR 3.130(1.4)(a)(4) by not promptly complying with reasonable requests for information from the client; and (5) SCR 3.130(8.4)(c) regarding conduct involving dishonesty, fraud, deceit and misrepresentation.

## 17.   KBA File 18-DIS-0124 — The Robinson Bar Complaint

Blanch Robinson retained Grayson in 2016 regarding custody and adoption proceedings concerning her granddaughter. Robinson paid Grayson a total of $826. Robinson complained that Grayson told her several times that she sent papers to the incarcerated birth father but was not getting a reply, but when Robinson contacted the prison, she was told the birth father had not received any legal documents from Grayson. Following the prison personnel's suggestion, Robinson went to Grayson's office and had her fax the documents. The documents were returned, signed, in two days.

A few days later, Grayson told Robinson that the documents had been filed for custody of her granddaughter. However, upon checking with the circuit clerk, Robinson was informed the documents were not filed. Grayson then told Robinson she was waiting to file both the custody and adoption papers at the same time. After Robinson returned adoption papers signed by her daughter, she kept contacting Grayson about getting a court date, but Grayson said the judge was busy. On February 8, 2018, Robinson was told by Grayson that since the judge knew Robinson, there would be no court date and that the judge would sign the adoption papers, but Robinson might informally have to meet with the judge in her office. Robinson learned of Grayson's suspension afterward.

Grayson states there were delays in the process as a result of the birth father's incarceration, but acknowledges she could have been more diligent in pursuing the proceedings on behalf of Robinson. Grayson also acknowledges that her level of communication with Robinson was not sufficiently responsive, on occasion, during the representation. Grayson states that unfortunately, as a result of circumstances beyond the reasonable control of Grayson, she was not able to pursue and conclude that contemplated legal representation. Grayson denies that she intentionally made material misstatements of fact to Robinson concerning the procedural status of any contemplated proceedings. Grayson further states that any such misrepresentations by Grayson were not intentional misconduct, although she acknowledges her misrepresentations were knowingly made. She states any such misrepresentations were made

42

during the time when Grayson's chronic depression and anxiety had not been properly diagnosed, which issues have now been properly addressed. Grayson regrets that circumstances were such that she not able to conclude that representation.

Grayson acknowledges that the allegations of Robinson's Bar Complaint would support a charge that Grayson violated five rules: (1) SCR 3.130(1.3) by failing to act with reasonable diligence and promptness in representing the client; (2) SCR 3.130(1.4)(a)(2) by not reasonably consulting with the client about the means by which the client's objectives are to be accomplished; (3) SCR 3.130(1.4)(a)(3) by not keeping the client reasonably informed about the status of the representation; (4) SCR 3.130(1.4)(a)(4) by not promptly complying with reasonable requests for information from the client; and (5) SCR 3.130(8.4)(c) by misrepresenting that there were court proceedings for adoption when no petition or other motions had been filed.

Grayson acknowledges Robinson should be fully reimbursed the $826 paid for attorney fees.

### 18.  KBA File 18-DIS-0022 — The Inquiry Commission Complaint in Abeyance regarding the Slone Malpractice Suit

On October 13, 2017, Lowanda Slone and Chalice Slone, through counsel, filed a civil complaint against Grayson in the Martin Circuit Court. The complaint alleged legal malpractice on the part of Grayson, concerning a medical malpractice claim. That civil suit remains a pending matter.

On May 21, 2018, the Inquiry Commission issued a complaint based on the Slones' Martin Circuit Court civil proceeding. The Inquiry Commission Complaint recites allegations made in that civil suit.

The Slones met with Grayson in April 2015 regarding a potential medical malpractice case. Grayson agreed to represent them, had the Slones sign several releases, and told them she would take care of the hospital bills. Grayson told the Slones she would file a lawsuit within one month. She later told them the lawsuit had been filed and she was awaiting a date to go on the docket. Mrs. Slone called and texted Grayson seeking updates on the status of the lawsuit, but did not receive a response. In March 2017, Grayson told the Slones she anticipated receiving an offer from the opposing party.

Then, in May 2017, Mrs. Slone learned Grayson had not filed a lawsuit. Mrs. Slone immediately contacted Grayson by text, but Grayson blocked her. Mrs. Slone also learned Grayson failed to take action with respect to the outstanding hospital bills, and they were sent to collections. The Slones hired new counsel and in July or August 2017 delivered a letter to Grayson requesting their file. Grayson advised Mrs. Slone she would have to make an appointment and pay for Grayson's services in order to obtain her file. Mrs. Slone made the appointment, but on the scheduled day Grayson called and said she had court in Johnson County and had to cancel. Mrs. Slone then called the Johnson County's Circuit Clerk's office to verify and learned there was no court on that particular day.

The Inquiry Commission, on Grayson's motion pursuant to SCR 3.180, held the disciplinary proceeding in abeyance as a result of the pendency of that civil suit.

Grayson acknowledges that under the Rules of Professional Conduct, the allegations would be she violated: (1) SCR 3.130(1.3) by failing to act with reasonable diligence and promptness in representing the client, (2) SCR 3.130(1.4)(a)(2) by not reasonably consulting with the client about the means by which the client's objectives are to be accomplished, (3) SCR 3.130(1.4)(a)(3) by not keeping the client reasonably informed about the status of the representation, (4) SCR 3.130(1.4)(a)(4) by not promptly complying with reasonable requests for information from the client, and (5) SCR 3.130(8.4)(c) regarding conduct involving dishonesty, fraud, deceit, or misrepresentation. Grayson's acknowledgement differs from the Inquiry Commission's specific listing of potential rule violations by including a violation of SCR 3.130(1.4)(a)(2), but excluding violations of SCR 3.130(1.16)(d) and SCR 3.130(1.5)(c).[12]

Since a civil proceeding is presently pending concerning the allegations set out in the Inquiry Commission Complaint, Grayson does not address the merits of the allegations. She states that the requested resolution of the

---

[12] Without placing limits on potential violations, the Inquiry Commission's Complaint states that Grayson's actions may be in violation of (1) SCR 3.130(1.3); (2) SCR 3.130(1.4)(a)(3); (3) SCR 3.130(1.4)(a)(4); (4) SCR 3.130(1.5)(c) (Fees) by not complying with the contingency fee agreement requirements; (5) SCR 3.130(1.16)(d); and (6) SCR 3.130(8.4)(c).

45

pending disciplinary proceedings as set out in the proposed consensual discipline, *i.e.*, a five-year suspension, effective October 8, 2017, would not be materially different if the 18-DIS-0022 disciplinary proceeding was addressed on the merits. Grayson requests, as a matter of judicial economy and to facilitate a global resolution of all pending disciplinary proceedings, that KBA File 18-DIS-0022 be closed.

### 19. KBA File 18-DIS-0042 — Investigative File regarding the Criminal Charges

This disciplinary proceeding stems from a criminal proceeding against Grayson in Pike Circuit Court. On February 1, 2018, Grayson was indicted on six counts: three counts of forgery in the second degree and three counts of criminal possession of a forged instrument in the second degree. The documents at issue in that proceeding are the same documents which are the subject of two of the above-described attorney disciplinary proceedings, 17-DIS-0027[13] (Patrick complaint) and 17-DIS-0368 (Fletcher complaint) (*supra*, cases two and ten, respectively). In 17-DIS-0027 the Inquiry Commission charged Grayson with violating SCR 3.130(8.4)(c) through conduct including, but not limited to: providing Patrick with a document bearing an inaccurate case number and a signature purported to be that of Judge Janie McKenzie-Wells when the judge had not signed the document. 17-DIS-0368 contains allegations similar to 17-DIS-0027. In 17-DIS-0368, the Inquiry Commission

---

[13] Grayson's current indefinite suspension is related in part to disciplinary proceeding 17-DIS-0027.

46

alleged Grayson gave Fletcher a copy of the Agreed Order signed by the parties, but also containing what appeared to be a Family Court judge's signature, a date when the judge signed the Agreed Order, and a supposed case number.

Both 17-DIS-0027 and 17-DIS-0368 were placed in abeyance because of the related pending criminal litigation. On May 30, 2018, the trial court, by agreed order, dismissed counts 1, 3, and 5, the three counts of forgery in the second degree. Counts 2 and 4, two of the criminal possession of a forged instrument charges, were also dismissed. On September 10, 2018, Grayson entered a guilty plea to count 6, the third criminal possession of a forged instrument count, related to 17-DIS-0027. On October 15, 2018, the Court entered its Judgment and Sentence. Grayson received a two-year sentence which was probated for one year. That unsupervised probation ran until October 2019. Grayson was also required to reimburse Gina Patrick and Naomi Fletcher the attorney fees they had previously paid and to submit letters of apology to those two clients. Grayson has satisfied those conditions.

Grayson acknowledges that her criminal conviction constitutes a violation of SCR 3.130(8.4)(b) by "commit[ing] a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." Grayson states she has accepted responsibility for her conduct.

## II. ANALYSIS

Grayson admits that she is guilty of the above ethical violations and moves this Court to accept her Motion for Consensual Discipline. She asks

this Court to enter an order suspending her license to practice law in the Commonwealth of Kentucky for a period of five years, effective October 8, 2017, with conditions. The KBA has no objection to Grayson's Motion for Consensual Discipline and requests that we order the proposed discipline.

The issue in a consensual discipline case is generally the appropriate discipline to be imposed under the circumstances. Factors relevant to the appropriate level of sanction are taken into consideration, such as the nature and severity of the offense(s), the need for deterring other members of the bar, the maintenance of the reputation of the bar as a whole, the protection of the public, the attitude of the offender generally, and the offender's present or future fitness to continue in the practice of law. *See, e.g., Grigsby v. Kentucky Bar Association,* 181 S.W.3d 40 (Ky. 2005); *Kentucky Bar Association v. Maze,* 397 S.W.3d 891 (Ky. 2013); and *Hill,* 476 S.W.3d 874. Each case is evaluated in light of its particular facts and circumstances, including aggravating and mitigating factors, and generally whether the proposed sanction is adequate and comparable to discipline imposed for similar conduct.

Citing *Kentucky Bar Association v. Sparks,* 538 S.W.3d 284 (Ky. 2018), and *Kentucky Bar Association v. Taylor,* 997 S.W.2d 464 (Ky. 1999), the KBA points out that this Court has disbarred attorneys for conduct similar to Grayson's. Nevertheless, the KBA regards the requested sanction to be appropriate when comparing the facts and the discipline imposed in *Kentucky Bar Association v. Johnson,* 457 S.W.3d 720 (Ky. 2015); *Perkins v. Kentucky Bar Association,* 412 S.W.3d 877 (Ky. 2013); and *Kentucky Bar Association v.*

48

*Hammond*, 241 S.W.3d 310 (Ky. 2007).[14] The KBA particularly relies on the American Bar Association (ABA), *Standards for Imposing Lawyer Sanctions* (ABA *Standards*), Rule 9 to point out the mitigating circumstances which it believes weigh in favor of Grayson's five-year suspension rather than disbarment, and thus distinguishing Grayson's case from *Sparks* and *Taylor.*

The KBA identifies the following as the actions taken by Grayson which allow a lesser sanction than disbarment. First, Grayson, participated in the disciplinary process. ABA *Standards* 9.32(e). While she did not respond initially,[15] after being indefinitely suspended, she contacted OBC, hired counsel and responded to the outstanding matters. Second, Grayson does not have substantial prior discipline. ABA *Standards* 9.32(a). Grayson's only prior discipline is a private admonition issued in May 2018, the underlying conduct occurring within the same time period as the cases currently before this Court. Third, other penalties or sanctions have been imposed. ABA *Standards* 9.32(k). Grayson has been suspended from the practice of law since October 2017 and in *Commonwealth v. Grayson*, Pike Circuit Court No. 18-CR-00213, she has been prosecuted and entered a guilty plea to one count of criminal possession of a forged instrument in the second degree, a Class D felony.

---

[14] *Hammond* involved seven disciplinary matters while *Johnson* and *Perkins* each involved three separate matters. By contrast, Grayson has nineteen separate disciplinary matters, rendering her case distinguishable on the breadth and scope of misconduct. Also, none of the cited cases involved a felony conviction as involved in Grayson's case.

[15] As listed, the first eight cases reached the point of Grayson being charged with failure to respond to the bar complaint.

Fourth, Grayson has expressed remorse. ABA *Standards* 9.32(l). Lastly, the KBA notes that Grayson has asserted personal or emotional problems played a role in the conduct at issue and her initial lack of response to charges and for which she has been undergoing treatment for chronic depression and anxiety. ABA *Standards* 9.32(c).

When determining appropriate discipline, we may consider the ABA *Standards* compilation of aggravating[16] and mitigating[17] circumstances. *See Hill*, 476 S.W.3d at 884; *Kentucky Bar Association v. Deters*, 360 S.W.3d 224, 233 (Ky. 2012); *Anderson*, 262 S.W.3d at 638-39. While we agree with the KBA that the weight accorded mitigating (and aggravating) circumstances will play a role in determining the appropriate discipline in this case, *Sparks and Taylor*, cited to show why disbarment is not the more appropriate discipline for Grayson, and *Johnson, Perkins*, and *Hammond*, cited on the other hand to show why a five-year suspension is suitable, do not provide the guidance required for Grayson's case as it currently stands. Grayson's primary mitigation defense to her numerous ethical violations is her depression.

---

[16] The following list of aggravating factors is found in *Standard* 9: prior disciplinary offenses; dishonest or selfish motive; a pattern of misconduct; multiple offenses; bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency; submission of false evidence, false statements or other deceptive practices during disciplinary process; refusal to acknowledge wrongful nature of conduct; vulnerability of victim; substantial experience in the practice of law; and indifference to making restitution.

[17] The list of mitigating circumstances found in *Standard* 9 is included in n.18, *infra*.

Relevant at this point is *Hill*, precedent requiring Grayson to provide medical proof sufficient to support depression serving as a mitigating factor.

In *Hill*, we found Hill's depression to be a mitigating factor and suspended Hill for eighteen months after being found guilty of twelve ethical violations involving a pervasive pattern of lying to three clients about the status of their cases, ignoring their repeated requests for information, and charging them for work not performed. 476 S.W.3d at 881, 885.

Hill's violations occurred in 2010, 2011, and 2012. *Id.* at 877-89. Hill presented evidence that as early as 2009 he began suffering from untreated depression and resulting anxiety, and he aggravated the suffering by self-medicating with alcohol. *Id.* at 882. At others' insistence, Hill sought help through KYLAP, which in turn put him in touch with a licensed clinical social worker for help with his substance abuse problems. *Id.* He was prescribed medication for his depression and attended individual and group counseling between March 2009 and September 2010. *Id.* Hill's ethical violations began to accrue after he stopped the counseling. *Id.*

Hill began seeing a psychiatrist in 2013. *Id.* The psychiatrist testified that the 2009-2010 treatment and counseling were inadequate to address his actual problems. *Id.* In January 2013, Hill entered into a KYLAP Supervision Agreement and as agreed, began and continued attending Alcoholics Anonymous meetings. *Id.* The psychiatrist testified to (1) a causal connection between Hill's untreated mental health condition and the conduct in the disciplinary cases and (2) his opinion that Hill was on the path to recovery if he

51

continued his same program and treatment. *Id.* One of Hill's clients also · testified that there were improvements in Hill's demeanor, appearance, and attitude toward his work between 2010-2012 and after he started his therapeutic regimen in 2013. *Id.* at 883.

The Board of Governors reviewed Hill's case after the trial commissioner found Hill guilty of twelve of fifteen violations and recommended that Hill be suspended from the practice of law for five years. *Id.* at 875. The Board unanimously agreed with the trial commissioner's guilt findings, but recommended a 181-day suspension along with other conditions, those being that Hill obtain the approval of the KBA's Character and Fitness Committee prior to readmission and that he continue substance abuse counseling through KYLAP. *Id.* Hill did not contest the Board's findings of guilt on the twelve ethical violations but argued that in light of the mitigation evidence he presented, even the Board's recommended sanction was excessive. *Id.* at 875, 882.

We expressed the rule for when mental health disabilities, such as depression, may be accorded mitigation effect in a lawyer disciplinary case as follows:

> For evidence of a lawyer's disability to be accorded a mitigating effect in a KBA disciplinary case, it must be shown that the disability caused the misconduct. *KBA v. Steiner,* 157 S.W.3d 209, 213 (Ky. 2005) (the burden of establishing a successful mitigation defense remains with the attorney); *KBA v. Christian,* 320 S.W.3d 687 (Ky. 2010). The attorney must also show a recovery from the condition demonstrated by "meaningful and sustained proof of successful rehabilitation." *Id.* at 690 (citing ABA *Standards for Imposing Lawyer Sanctions* Section 9.32(i)(3)). Moreover, "the

52

misconduct must have stopped and recurrence proved to be unlikely." *Id.* In this vein, consideration should also be given to the attorney's involvement in Alcoholics Anonymous and "earnest participation in the Kentucky Lawyer's Assistance Program." *KBA v. Hawkins*, 260 S.W.3d 337, 339 (Ky. 2008); ABA *Standards for Imposing Lawyer Sanctions* Section 9.32.[18]

*Id.* at 884; *see also Bratcher v. Kentucky Bar Association*, 487 S.W.3d 897 (Ky. 2016) (citing *Hill*).

Here, although Grayson did not cite *Hill* when requesting a remand of the disciplinary action before this Court in 2018, Grayson recognized the need to provide mental health mitigation evidence. In particular, she stated that she recognized the need to establish an appropriate connection between the conduct at issue in the Charges and any adverse health condition of hers which existed during that time. However, upon return of this case to the Court through a verified motion for consensual discipline, neither Grayson nor the KBA point to any medical proof in the record to sustain findings consistent

---

[18] *Standard* 9.32 factors which may be considered in mitigation.

Mitigating factors include: (a) absence of a prior disciplinary record; (b) absence of a dishonest or selfish motive; (c) personal or emotional problems; (d) timely good faith effort to make restitution or to rectify consequences of misconduct; (e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (f) inexperience in the practice of law; (g) character or reputation; (h) physical disability; *(i) mental disability or chemical dependency including alcoholism or drug abuse when: (1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability; (2) the chemical dependency or mental disability caused the misconduct; (3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely;* (j) delay in disciplinary proceedings; (k) imposition of other penalties or sanctions; (l) remorse; (m) remoteness of prior offenses. (Emphasis added.)

with the rule expressed in *Hill.* Indeed, no medical proof in the form of medical records, a physician's report or even a letter is offered. Although it is widely known that depression is a serious mental illness, and lawyers are not immune to its debilitating effects, without sufficient medical evidence to explain the relationship between Grayson's depression and her numerous serious ethical violations, Grayson's depression claim cannot be viewed as mitigating.

## III. CONCLUSION

Although it may be that a five-year suspension, with conditions, is appropriate discipline for Grayson, the Court cannot make that determination based upon Grayson's verified motion, the KBA's response, and the record currently before it. Therefore, the Court denies Grayson's request for imposition of the sanction negotiated with the KBA and this case is remanded for hearing and further proceedings consistent with this Opinion and Order.

All sitting. All concur.

ENTERED: February 20, 2020.

CHIEF JUSTICE